MESSERSMITH, Appellant, v. STANGA, County Treasurer, Respondent

(21 N. W.2d 321.)

(File No. 8780. Opinion filed January 15, 1946.)

**Parliman & Parliman,** of Sioux Falls, for Appellant.
**James R. McGee,** of Salem, for Respondent.
**George T. Mickelson,** Atty. Gen., and **Benj. D. Mintener,**
Asst. Atty. Gen., amici curiae.

ROBERTS, J.   This is an appeal from a judgment of the Circuit Court of McCook County dismissing an action brought by Hattie Messersmith against the treasurer of that county to enjoin and restrain him from issuing a tax deed.

The material facts, as disclosed by the record, are that plaintiff is the owner of lots one and two in block 3 of the original townsite of Salem.   December 21, 1931, these lots were sold for the 1930 taxes and certificates of sale were issued to McCook county. March 7, 1935, plaintiff made application pursuant to Chap. 194, Laws 1935, for the privilege of paying the 1930, 1931, 1932 and 1933 taxes in ten equal installments of $68.16 each and deposited with the county the amount of the 1934 taxes and upon approval of the application by the board of county commissioners, a tax receipt for that year was issued dated April 8, 1935. Plaintiff made five payments of $68.16 each. The total of the receipts written on 1930 tax receipts blanks is $215.22. It appears from the tax contract that this was the amount of delinquent taxes chargeable against the property for the year 1930.   The balance of the five payments is evidenced by the use of 1931 tax receipt blanks. The receipt that was issued March 5, 1936, for the amount of the first installment contains no reference to the contract.   There is stamped on the receipts subsequently issued the words "Contract No._____ Installment_____ Balance 19_____ Tax Unpaid____ Balance-Contract Unpaid——" The number of the contract "126" is inserted and with exception of the receipts issued for the third installment there also appears the notation "Payment is accepted under compromise tax contract and does not affect the validity of the tax sale certificate held by the County unless subsequent taxes are paid in full."

Plaintiff subsequently paid the balance of the delinquent taxes chargeable against lot two. February 3, 1944, the county caused notice to be served upon plaintiff stating that the right of redemption would expire and a deed would issue to lot one upon the expiration of 60 days unless the property be redeemed as provided by law.

At the time in question, the statute, Chap. 194, Laws 1935, providing for the adjustment and payment of delinquent taxes read, in part, as follows:

"Section 1. Any person having delinquent taxes charged against him or against his property may apply to the Board of County Commissioners of the County wherein such taxes are payable to adjust and pay such taxes as follows: The application shall be in writing executed in triplicate and shall show:

"(1) The full name and address of the applicant.

"(2) A legal description of all property against which said taxes are a lien or charge.

"(3) An itemized statement of such taxes and the total amount thereof including interest, penalty and costs, if any.

"(4) That there is no Tax Sale Certificate covering any of said taxes outstanding and held other than by the County.

"(5) That the applicant has deposited with the County Treasurer sufficient money to pay the first installment of taxes assessed against applicant and said property in the year 1934, and due and payable May 1st, 1935, but not yet delinquent, but if the first installment be not paid before May 1st, that the applicant has deposited all taxes due and payable in 1935, such deposit to become payment on acceptance of the application.

"(6) That the applicant contracts and agrees to pay all prior and delinquent taxes in ten (10) equal annual designated payments beginning one year after the acceptance of the application and agrees that the lien of such taxes and the obligation of applicant to pay same shall not cease or terminate unless or until applicant shall make each and all of such ten (10) annual payments as contracted.

"(7)   That the applicant specifically waives notice of nonpayment of any installment or installments due under the contract entered into and consents that the County Treasurer may proceed to collect all taxes unpaid under said contract, without notice of termination of the contract."

"Section 3.   On receipt of an approved triplicate application the County Treasurer shall receive the money on deposit with him as payment of the current taxes and issue receipt therefor with proper indorsements thereon referring to the prior unpaid taxes and the applicants contract and said receipt so issued by the County Treasurer shall not be a bar to the collection of any of said prior taxes. But all proceedings to collect such prior taxes shall be stayed unless and until the applicant shall fail to make one or more of the contract payments when due. In case of a default of any one or more installments on the day when such installment becomes (sic) due then the County Treasurer, without notice of any kind as to the delinquency in the payment of such installment or installments shall proceed to collect all of such unpaid delinquent tax as though no contract had ever been made hereunder."

We first consider the contention that the county having issued tax receipts which recited the payment of the 1930 taxes is precluded from asserting any right or title under the tax sale certificate. This argument is premised upon counsel's construction of section 6766, Revised Code 1919, SDC 57.1009, which read as follows: "The county treasurer in collecting taxes shall collect the oldest tax first, and shall in no case issue his receipt for the current year until all prior taxes are paid. The possession of a tax receipt issued by the county treasurer shall be conclusive evidence that all prior taxes which are chargeable against the lands in such receipt described, or, in case of a personalty [property] tax, against the person named in such receipt, have been fully paid and shall be a bar to the collection of any prior taxes thereon, unless otherwise stated in the receipt." It is plain from the record that the five payments were made under the terms of the contract. Under the requirement of the statute and the terms of the contract,

plaintiff agreed to pay all taxes embodied in the contract in ten equal annual installments beginning one year after the acceptance of the application and acknowledged that the obligation to pay such taxes would not cease until she had paid all of the installments.

We are satisfied that the action of the county treasurer in issuing the statutory tax receipts and causing the records to show that he had collected the oldest tax first was unauthorized and as between the plaintiff and the county was not binding on the latter. The rights of innocent third parties are not here involved. The fact that the absence of authority to issue tax receipts might in no way affect their evidentiary value under the statute is not material. A clear tax receipt thereunder is conclusive as to the fact that prior taxes have been fully paid. Harris v. Stearns, 17 S. D. 439, 97 N. W. 361; Guaranty State Bank v. Roberts County, 57 S. D. 515, 234 N. W. 35, 73 A. L. R. 148; Union Central Life Ins. Co. v. Hoilien, 60 S. D. 183, 244 N. W. 116. But such a receipt is not conclusive for the purpose of proving that the full tax for the year for which the receipt is issued has been paid. The receipt for the amount of the first installment recites the full payment of taxes for 1930. It was subject to explanation or rebuttal by other competent evidence. The notations on the receipts subsequently issued on 1930 and 1931 tax receipt blanks brought them within the exception contained in the statute and these receipts were not conclusive as to the payments of all prior taxes chargable against the property therein described. See Rochford v. Fleming, 10 S. D. 24, 71 N. W. 317.

The act of 1935 expressly continued in force the lien of all taxes embodied in a tax contract until payment of all installments. Section 3. Plaintiff contends that a tax sale certificate is not a lien; that the execution of the contract herein had the effect of extinguishing the tax sale certificate; and that the proper mode of enforcing the lien for taxes after default was by a resale of the property. The statute ought not to be given such construction as will prejudice the public interest or impair an existing right unless language requiring it to have such operation is so

clear that no reasonable doubt can exist of such intention. See Thompson v. Wordeman, 64 S. D. 261, 266 N. W. 142. We find no such intent in the act. There was nothing in the statute nor in the situation of the parties that disclosed any reason for extinguishing the rights of a county under a tax sale certificate. Moreover, when a purchase is made at tax sale by the county, it is merely a method of enforcing collection and the tax remains unpaid until redemption is made, the certificate is assigned or the county takes a tax deed. Brink v. Dann, 33 S. D. 81, 144 N. W. 734; Union Central Life Ins. Co. v. Hoilien, supra. The statute reserved the right in the county in case of default to collect all unpaid delinquent taxes "as though no contract had ever been made." It is clear that the legislature did not intend to deprive the county of any remedy existing at the time of the making of a contract for enforcing payment after default.

■ A portion of the tax levied against the property of the plaintiff was for school purposes. Plaintiff sought to attack the validity of the assessments on the ground that there was no classification of the real property within the school district. The assessment of 1930 is the foundation of the procedings resulting in the issuance of the tax sale certificate involved in this action and no issue with respect to subsequent assessments is tendered by the record. At the time of the 1930 assessment there was no requirement that real property in a school district be classified as "agricultural lands" or "other real estate." Simmons v. Ericson, 54 S. D. 429, 223 N. W. 342; Great Northern Ry. Co. v. Whitfield, 65 S. D. 173, 272 N. W. 787, 111 A. L. R. 1475. After the adoption of an amendment to the Constitution (Section 15, Art. VIII) authorizing the legislature to classify properties within school districts for purposes of school taxation the legislature, by the enactment of Chapter 256, Laws 1931, required the classification of real property in all school districts wherein the average assessed valuation of agricultural lands was more than $27 an acre. Whether a failure to classify property under this statute and provisions amendatory thereto would invalidate a tax sale certificate is, as stated, a question we do not reach in this case.

The judgment appealed from is affirmed.

All the Judges concur.

HAYES, Circuit Judge, sitting for POLLEY, J.