BOEHRS, Respondent, v. DEWEY COUNTY et al.,
Appellants

(48 N. W.2d 831)

(File No. 9191. Opinion filed August 7, 1951)

**Morgan & Neumayr,** and **K. J. Morgan,** all of Gettys-burg, for Appellants.

P. M. Burns, Timber Lake, for Respondent.

LEEDOM, J. This action involves ownership of Dewey County land sold for taxes. Appellents claim title as successors to the interest of the deceased owner of record at the time of the issuance of tax deeds. Respondent claims title through purchase from Dewey County under two tax deeds covering non-contiguous tracts.

The principal issue in the case is in our opinion determined by the answer to this question: Does the three-year statute of limitation, SDC 57.0903 as amended by Ch. 337, Laws 1941, operate in favor of a tax deed that is based on a certificate of sale for which payment is later provided by an installment contract under Ch. 194, Laws 1935, when the notice to redeem from the certificate was given and the tax deed issued with all payments due on the contract paid, but all taxes subsequently accruing delinquent? It is our view as hereafter fully set forth that issuance of a tax deed under these circumstances is a "jurisdictional" defect and that the statute of limitation is not a bar to an attack on the deed. It follows that it was error for the trial court to quiet respondent's title based on such tax deeds.

■ An incidental question is presented and becomes pertinent. In such a case as this should the trial court determine separate redemption amounts for pieces of land separately taxed and separately sold? This question we answer affirmatively.

The essential facts on which we rest our opinion are these: The qualified and acting administrator of the deceased owner of record entered into contract with Dewey County under the tax adjustment statute cited above for installment payment of the delinquent 1933 taxes on two tracts of land. This administrator, a brother of the deceased record owner, three sisters and another brother of decedent, are the successors to decedent's interest in the land. Under the provisions of the tax statute it was necessary for the administrator to pay the 1934 taxes in full and each year thereafter one-tenth of the 1933 tax beginning one year after November 6, 1935, the date of the contract. All of these payments were made to and including the ninth installment which matured November 6, 1944. The administrator failed, however, to pay the 1935 taxes and all others subsequently accruing down to the present time.

After the ninth contract installment had been paid (about November 6, 1944) and before November 6, 1945 when the last installment became due, Dewey County officials proceeded to take tax deeds to the property and in this period served two separate notices to redeem from the certificates covering the 1933 taxes and issued two tax deeds. The two tracts were non-contiguous and had been separately assessed and separately sold for the 1933 taxes all of which were covered by the tax installment contract.

Facts relating to the service of one of the notices to redeem and to an incorrect recital in one deed as to date of sale of the property are not significant because we do not reach these questions in this opinion.

■ This court has from very early decisions consistently taken the position that a tax deed is invalid when issued on a certificate representing taxes previously paid, or from which there has been a redemption; and has recognized such a defect as jurisdictional against which a statute of limitation is necessarily inoperative. The position was an-

nounced in Cornelius (Lynch, Intervener) v. Ferguson, 23 S. D., 187, 121 N.W. 91, 93; it was recognized in even earlier decisions; and was reaffirmed as late as Hough v. Perkins County, 72 S. D. 236, 32 N.W.2d 632, 633, decided in 1948. We reaffirm the soundness of the rule.

 We recognize that the execution of the installment contract does not constitute payment of the delinquent taxes nor redemption from the certificate of sale. Since, however, the purpose of the contract as stated in the statute is "to adjust and pay such taxes", the contract, so long as it is being performed by the taxpayer, clearly brings this case under the rule announced in Cornelius v. Ferguson, supra, relating to payment and redemption. The statute clearly and in language so free of ambiguity as to leave no room for interpretation in this respect provides that so long as payments are current, steps toward a tax deed shall not be taken. Section 3 of Ch. 194, Laws 1935, provides in part, "* * * But all proceedings to collect such prior taxes shall be stayed unless and until the applicant shall fail to make one or more of the contract payments when due." The very essence of the bargain between the taxing authority and the harassed taxpayer using this emergency measure was that the county had enlarged the taxpayer's right of redemption. For us to hold that county officials could disregard the obligation of the county and, notwithstanding the taxpayer's full performance, proceed to take other steps to collect, that is take tax deed to the land, would obviously be in utter disregard of both the letter and spirit of the law and give validity to an act for which the power of performance was wholly lacking.

In Messersmith v. Stanga, 71 S. D. 88, 21 N.W.2d 321, this court recognized the right of a county to institute tax deed proceedings on a certificate covered by an installment contract where payment is in default. Respondent relies on this decision as authority for the proposition that Dewey County could lawfully proceed to take tax deeds notwithstanding the installment contract; but in the Messersmith case the contract was in default as stated and the question in this case was not under consideration.

 Bearing on the validity of the deeds involved

in the present case is the additional circumstance of the administrator's failure to pay all subsequent taxes. If such failure amounts to a breach of the installment contract then under the authority of Messersmith v. Stanga, supra, the county could rightfully proceed to take tax deeds.

There is nothing in the language of the statute involved, Ch. 194, Laws 1935, that entitles us to interpret it to mean that failure to pay subsequent taxes constitutes a violation of the installment contract. Actually the language used in the statute and quoted above quite clearly controverts any such interpretation. The only condition specified in such language releasing the county from the provision against "proceedings to collect" is failure "to make one or more of the contract payments when due."

This statute was the second such to be adopted during the years of the latest depression period. Two others followed. The first was Ch. 194, Laws 1933; the two latest were Ch. 241, Laws 1937, and Ch. 279, Laws 1939. On the question of the effect of failure to pay subsequent taxes on a contract made under the statute here involved, we think it significant that in the two latest reenactments of this tax relief measure, it was expressly provided that the taxpayer forfeited all his rights under the contract if he failed to pay any subsequent taxes accruing on the property. Section 1 (7) of both Ch. 241, Laws 1937 and Ch. 279, Laws 1939. While it might be argued with some plausibility that the legislature must have intended in all such enactments that a taxpayer keep his subsequent taxes paid to enjoy the benefits of his adjustment contract, the legislature did not so state in the first two laws. There is no rule of statute construction entitling us to read into the statute here involved the language supplied in the later laws. While it is fundamental that we must strive to ascertain the real intention of the lawmakers it is equally fundamental that we must confine ourselves to the intention as expressed in the language used. See Ex parte Brown, 21 S. D. 515, 114 N.W. 303. To violate the rule against supplying omitted language would be to add voluntarily unlimited hazard to the already inexact and uncertain business of searching for legislative intent.

In the case of Thompson v. Wordeman, 64 S. D. 261, 266 N.W. 142, this court went outside the provisions of Ch. 194, Laws 1933, to accelerate maturity of installment payments. In that case the emergency tax measure was being interpreted and reconciled with other tax statutes. While the question here under consideration was not raised in the Thompson case and the rule is not there expressed, we think it fairly to be understood from that case that failure to pay subsequent taxes does not constitute a breach by the taxpayer of his installment tax contract under Ch., 194, Laws 1933. The statute we are interpreting, Ch. 194, Laws 1935, is identical in so far as we are here concerned.

We are of the opinion that the administrator's failure to pay taxes subsequently accruing did not entitle Dewey County to proceed to take tax deeds when the installment contract was in good standing and its terms were not otherwise·breached by the taxpayer.

■ Since the effect of our opinion is to give appellants a right to redeem, the circuit court should determine separately the amount required to redeem each of the two tracts of land here involved. We are unaware of any authority justifying a determination of a single redemption price for two tracts of land that are noncontiguous and that were separately taxed and separately sold. It seems entirely clear from our statutory provisions relating to redemption from tax sales that a property owner is entitled to redeem only part of land sold and therefore has the right to a determination of the payment required to redeem only part. Such determination should be made with due regard under the law and the facts as to allowances arising from improvements made in good faith and benefits received from use of the property under claim of title by virtue of the tax deeds.

The judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.

All the Judges concur.